Dowd v. Newcastle County Wisconsin Good morning, Thomas C. Marconi, Esquire, from Wilmington, Delaware. On behalf of the appellants, Christine Dowd and Roy and Damon Morrison, I'd like to reserve five minutes. That's granted. I don't understand what this case is doing here. As far as I can tell, you represent the appellants, the plaintiffs. That's correct, Your Honor. Maybe my question really goes to the other side. I think, haven't they orally given you everything that you want, but they haven't put it into regulation? I mean, wouldn't you be happy if they changed the ordinance? I would, Your Honor. I'd be delighted, but they haven't changed the ordinance. But that only applies to the part of the ordinance that allows them to continuously ticket a homeowner for the same violation. Same bundle of sticks. I mean, we call this the bundle of sticks case. We do, too. Compared to the case that's coming up next, you know, it's, go ahead. I understand, Your Honor. But I think we have to think about this case in the context of a person who's cited under it. You're right, the county did change or informally change the practice that we thought really was the most onerous. That you have to either subject yourself to catastrophic fines or change your property in a way that you don't want to change your property simply because the county says so. And you have to do so, God bless you, before you have any opportunity to be heard in any way. Well, let me talk about that for a second. You know, in terms of a pre-deprivation hearing, you would agree that it doesn't have to take on any formal, formality, you don't have to appear in a room like this in order to be heard, right? Agreed. I do agree. And wasn't there really an opportunity to be heard here before the ticket was issued in terms of providing the courtesy letter that was issued and then an opportunity to have a discussion with the officer to try to dissuade the officer from issuing the ticket in the first place? Your Honor, I don't consider that to be an opportunity to be heard. I think the Constitution says, and the cases that interpret it, is that it has to be in front of someone who's neutral. I don't think that Officer Yasik is a neutral third party who's entitled to make a decision on, you know, something like a ticket in this situation. I think you need somebody who is more disinterested in order to satisfy the requirements of due process. Yes, is there some way to perhaps inform? Go ahead. Who do you think should do that, that neutral, objective review? Well, I think that if I had to stick with the land use official that they have now, you know, I don't think that's unconstitutional. But the problem is I think it is unconstitutional to force us to part with the fine before we have any opportunity to contest the charge. That's the problem. They have apparently cured the problem with the constant ticketing. But I think that that should be placed into the code. And thus far, even though they said they did it in October of 2010, as far as I understand, there's been no amendment to the code. So he who gives it can take it away. The county has a rule to show cause procedure, right? Yes. But they haven't used it for this. They use it for other parts of violations of the property maintenance code, but not this. If they use it for this, would you think it's constitutional? I would, because it's pre-deprivation. And it's a hearing. We can be heard. Your clients were not subject to this continuous ticketing. Well, they were only subject to the, not subject to it, Your Honor, if you mean they were lucky enough. Not continuously. They received four tickets, two of which were withdrawn. But the way the statute's written, they could have gotten a ticket every single day. They were exposed to it. We were definitely exposed to it. And it's also important to keep in mind the paperwork that they send out with those tickets and the paperwork that comes with the courtesy letter tells the people that receive it, you're going to be ticketed every single day if you don't do what we say. And also, and if you don't pay those tickets, they're going to double in 30 days. And if you still don't pay those tickets, we're going to tell your mortgage company. And if you still don't pay those tickets, we're going to foreclose on your house and take it. I'd like to hear the other side. So, I think that, that... Mr. Marconi, we would like to hear, this is unusual, but I'd like to hear the other side. We'll come back. You'll get your time back, okay? Thank you, Your Honor. Members of the Court, James Edwards here on behalf of Newcastle County. Mr. Edwards, this is patently an unconstitutional procedure. I mean, anybody who's had Civil Procedure I or Con Law I will know that you can't do this. Why didn't you use a rule to show cause? You would have... I would agree with you in 1969 it would be patently unconstitutional. The simple fact of the matter is the Supreme Court started to struggle with the administrative processes when it got into the Matthews case. Matthews v. Eldridge, yeah, I used to teach Civil Procedure, I know that. And the Goldberg v. Kelly. Yeah. Those two cases, the Supreme Court came in and said, look, there has to be some kind of reasonableness. Government cannot be handcuffed by the Due Process Clause in everything that they do. So Goldberg v. Kelly says, we're going to expand this reasonableness a little bit and say, okay, you have to have a hearing, but we're not going to require the traditional pre-1970 hearing that talks about... Why didn't you use a rule to show cause? If you had a rule to show cause, you would have had... You have that process in Delaware, in the county. That way, they would have had notification before they were fined and it would have taken care of all the rest. I don't understand why the county went off on the route that they took. We were faced with the same problem that Matthews Court talks about. Our process for code violations actually went through the criminal court system. It did not go through an administrative process. It's a misdemeanor violation. It's the same Constitution. It's the same Constitution, but the county was not set up to take on this additional workload. It did not have the staffing. It did not have the personnel. If you take a look at the legislation and the whereabouts clauses in the legislation, you see that the legislative branch down there said, look, we're having a problem. We're getting six months out before we even get a chance to get in a criminal court. There has to be some different way to do this. Is this criminal court? That's what we traditionally did. We were in criminal court before we adopted this legislation. All the code enforcement claims went through criminal court. There's a misdemeanor violation, a minimum... Somebody has a bundle of sticks and they have to go through criminal court? That's correct. That is the legislation in Delaware. That is how it was done 100% of the time for code enforcement cases before we got to this legislation. But at least in that circumstance, you had a hearing, right? So you've traded the lengthy delay until we get into criminal court with no hearing? That's not correct. We had a hearing. The hearing's on paper. If you take a look at the map... But isn't the problem here that you've got to pay the fine before you can get the hearing? Well, there's two issues here, I think. One is... And you get a ticket for every day of violation? It's not in person. I'm sorry. But there is an issue about whether or not you have to pay the fine ahead of time. What the county did... It says that. It says that in the papers. What the county did was, if you had a traditional hearing, a rule of show cause hearing, there would be a $200 charge per count if you're found guilty, and a $300 administrative fee for having to set up the room and hold this hearing. That was changed so that you could have a $50, it was just a $50 per count fine. So you take the possibility in this case of what would have been a $800 fine, and it turned into a $100 fine. You give up the right... It could have been a lot higher if they had followed the letter of the law that said every day that pile of sticks exists is a violation, we can issue a ticket every day. It could have been a lot higher, but now we're starting to confuse principles here. Because that's a statutory challenge. Whether or not the statute can withstand scrutiny is different than the facts of what actually happened in this case. So when we look at this particular issue, you've got to look at the county's issue is, we're having a problem, we're six months out, how do we fix this? There was a supervisor who testified that he heard about this procedure, ticketing, before and had thought about doing it. The city of Wilmington, which is an incorporated city in New Castle County, actually adopted a ticketing ordinance, the same exact ordinance, with one very, very important difference. The city of Wilmington came in and they just issued tickets. When the county sat down with the city and talked to the legislatures, the legislatures said we don't want to issue tickets, we would like to give people advance notice. Because we're not interested in making money, we're interested in having the properties cleared up. That's why we're here in the first place. Is the advance notice the courtesy letter? That's correct. Is that the paper hearing you're talking about? No. The courtesy letter was a notice, in this case, that was sent out that said these are the violations that we could ticket you for. If we see them on your property, we're going to issue a ticket, and please clean them up. And it gives you the date after which the county will be out. So they're telling people, we've got a complaint, we're going to come out to your property, this is what we're looking for, we're going to write you a ticket if we come out. In this particular case, it also had a contact number. They were going out of town, they contacted us and said we're going out of town if we have an extension. The county said that's fine. The code officers had many meetings with them and spoke with them about what the violations were. There was a disagreement about how to construe the statute, which is how we ended up here. But you have to go back and look at it. The Matthews case, in all of the Matthews cases, the Third Circuit is using Matthews cases also, talks about this balancing interest. When you take a look at this administrative governmental But you're charging people before they've had a hearing. They have to pay a $50, they have to pay the fine for the specific ticket. Whether it's $50 or whether it's $1,000, the Constitution says you shouldn't do that. That's not what Matthews says. And the Supreme Court changed that in 1970. And they said it requires a balancing test. If you take a look at the deprivation, and they talk about it, deprivation of vehicles being towed. They tow somebody's vehicle without having a hearing. The hearings occur 127 days down the road. The courts have said that deprivation of property is fine. The amount of time it takes to get to that hearing is fine. We're okay with that. Because we're going to balance the interest. We're not dealing with that. We're dealing with a bundle of sticks on somebody's property. Well, it's a bundle of sticks on somebody's property in this case. It's a hundred bags of trash on another property in another case. Well, my guess is the hundred, I mean, those people don't say what these people said, that this is a nature thing. I understand the defense, and it's a defense we've seen before. Their original defense was it was a compost pile. If you take a look at the record, they said it was a compost pile. After they said it was a compost pile, it became a nature thing. So, if you take a look at the factors in Matthews, you really have to balance the interests of the parties. Matthews was a social security case, as I recall. It's still a deprivation of property case. There's deprivation of firing cases. There's all kinds of deprivation of property cases, which are far more severe than $100 at issue in this case. Now, in this case, don't you have to pay a $500 fee to appeal? There is an appeal fee in the code that predated this legislation. That appeal fee is for the Role to Show Cause hearing or any other administration hearing to go before this board. It had nothing to do with this legislation. This legislation just happened to use those specific appeal provisions in the order in the code. What do you use the Role to Show Cause for? What kind of cases? The Role to Show Cause started for inspections cases, which were building code violations. Why shouldn't that be used for this also? Why shouldn't, if you have a bundle of sticks or trash bags or whatever it is, why shouldn't you be able to, why shouldn't the county just send out a Role to Show Cause and say, on such and such a day, you come and we'll show you what you're doing. It's such a simple procedure. I mean, if you go down to City Hall, where they do these things all the time, you wouldn't have a lot of time. It would go one after the other. You'd have a long list. Most people wouldn't show up because you say that's what happened here. I just don't understand why Delaware should be different than every place else. Well, they're not. This is actually an emerging trend. I said the City of Wilmington in Delaware does it. The City of Newark does the same thing. And the State of Delaware does it. Where do they come here? The State of Delaware does it for tickets for their highways also, for running through the E-Z Pass. And there's other jurisdictions throughout the country that do it. But the important thing here is we follow the Matthews factors. The county did not have personnel sitting there, did not have rooms ready, did not have the recording equipment. Well, if you change the rule, then you would have them ready. You know, they didn't have it ready then. The government would have to spend more money. We'd have to get more resources in there. You have to follow the Constitution. In order to, and we think we are following the Constitution by following the Matthews balancing test. I think the district court judges did a good job analyzing it and determining that we were in compliance with Matthews and that we were providing all the process that was due in these ticketing cases. Okay. There seems to be a fairly significant risk of an erroneous ticketing. I mean, when you got about 50% of the appeals, the written appeals, resulting in a reversal. I don't know that it's significant because all we really have is a statistic out there that says there's a hearing office in there that's getting rid of 50% of the case. That's what they rely on. The only testimony that talks about that is from the supervisor of the code enforcement unit. And the supervisor talks about the types of cases that are being gotten rid of or being found not guilty by the hearing officer. And this is the only facts on the evidence besides the percentage is the recipient was incapacitated, the recipient needed additional time. So even though they gave him a letter in 10 days, the recipient came in and said, I didn't have enough time to do it. The hearing officer says, that's fine, you have more time now. That not enough time was given to the recipient by the, after they received the letter. The, there was unclear photos. The photos weren't clear. If it was a high weeds and grass case and there wasn't a ruler there, it got thrown out. The failure of the CEO to document why they violated it. So even though there's a picture of a pile of sticks and the code enforcement officer didn't say, I observed a pile of sticks, the hearing officer gets rid of it. So what you really have here is matters of fairness and a hearing officer that's giving more due process and perhaps he should. Why is it property maintenance companies that are exempted or who's exempted from this ordinance? The exemption covers property, I'm sorry, maintenance corporations. In Delaware, when you build a community, you're, you're required by law to have some open space and that open space has to be maintained by a corporation of the members of that community, people that live in the community. Those corporations meet once a year. When they get ticketed on this stuff, it's very difficult for them to get the officers together, meet their bylaws and everything, because these are people that have jobs and just doing this as a volunteer, to get their bylaw, follow the bylaws, make a decision, try to figure out how to manage the tickets. They were exempted from the process because they couldn't, they could not get the wherewithal to get everything together in time to try to get these issues resolved. Thank you. Thank you. Mr. Marconi, we told you we'd listen to you. We took time away. We changed it. I'm sorry. Go ahead. Thank you, Your Honor. Just, let's look at the Matthews versus Eldridge test. Let's look at the first and the third prongs. The first looks at the private interest that's being affected by the procedure in place and the third prong looks at the government's interest that's being at issue with respect to the instant ticketing system. Let's look at the third one. What is the county trying to prevent by way of this instant ticketing process? Because they've said on this record more than once that their whole focus here is not the Constitution, it's prevention, it's enforcement, and they also make a million two approximately a year off of this at $50 a ticket. But what they're trying to do is prevent, and I'm not saying these things aren't important, high grass, bags of trash, like we had, they called this brush pile debris, so if you have too many sticks in your yard, they want to do something about that. If your trees aren't trimmed over the sidewalks low enough, they want to do something like that. Okay, let's compare that to the private interest that's at stake. The private interest that's at stake is a homeowner's ability to enjoy quietly his or her use of their property. So yes, sticks and trash and things and high grass are important, but if you look at the O'Bannon case and the James Daniel Good case, I mean, those cases say that a person's ability or the person's right to be secure and left alone in the comfort of their own home is something that our entire Constitution is based on. So you can't, if you put that private right on the same screen with keeping the grass cut, keeping the grass cut is barely even visible in terms of its constitutional importance. Is this an as-applied challenge, you're challenging the ordinance as applied to the Moors, or is it a facial challenge? Your Honor, you know, that came up, sort of came out of the blue in the middle of the briefing below, but I frankly didn't think of it that way, but I'm saying that this thing is... You didn't think of it which way? I didn't think of it either way. We were told in September, and I don't want to get off track with the question, but to answer the question, it's both. It's both. As applied to anybody, there's no way that New Castle County can apply these appeal procedures to anybody and have it satisfy the requirements of due process, the case law, the Matthews v. Eldredge says it, this court's case in Ellesmere Park, Zinuman, Parat, all those cases, there's no way that New Castle County can apply these appeal procedures as they're written now, or as they did them with respect to the Moors, and satisfy due process. Because first, you have to pay first before you have any opportunity to contest the charge, and second, if they want, they can continue to ticket you until you give up. Well, that's not what they actually do, but it says that they can. It says that they can, Your Honor, and they haven't amended their statute, and they've had an opportunity to do it, and they said that they changed their policy informally because of this case, and I'm sure it's because of the district court's September 29 or September 21, 2010 ruling that said that, hey, there's a problem here, and we want to look into it. Okay. Okay. Thank you.